**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF LOUISIANA**

IN RE:

CARLA R. SMITH                                      CASE NO. 24-10786
    DEBTOR                                          CHAPTER 7


TOWER CREDIT, INC.
    PLAINTIFF

V.                                                  ADVERSARY NO. 24-1037

CARLA R. SMITH
    DEFENDANT

**MEMORANDUM OPINION**

The trial in this matter took place on September 11, 2025. At the conclusion of the trial, the court took the matter under advisement. The court now enters this Memorandum Opinion in support of its decision in favor of the defendant, Carla R. Smith. As a result, the entirety of Tower Credit Inc.'s claim is discharged.

**I. Facts**

Based on the testimony at trial, the exhibits admitted into evidence, and the record of this proceeding, the court makes the following findings. On November 20, 2012, the defendant, Carla R. Smith ("Ms. Smith"), applied for a $400 loan from the plaintiff, Tower Credit, Inc. ("Tower") with a stated purpose of buying Christmas presents. Ms. Smith's written loan application[1] ("Loan Application") provides that at that time, she lived with her mother and sister, and Ms. Smith's payment of rent was $150. The budget that Ms. Smith also provided to Tower on November 20, 2012 ("Budget"), identifies her monthly rent obligation as $150.[2] Tower

---

[1] Exhibit P-1.

[2] Exhibit P-3.

approved the $400 loan and added it to an already pending loan by Ms. Smith for a total promissory note of $5,255.59 at 29.64% interest.[3] Ms. Smith's 1999 Honda Accord served as collateral for the loans ("Collateral").[4]

Ms. Smith defaulted and on July 26, 2013, Ms. Smith voluntarily surrendered the Collateral to Tower for an agreed upon $1,000 credit on her indebtedness.[5] Tower filed suit against Ms. Smith in Baton Rouge City Court,[6] and on March 20, 2014, the Baton Rouge City Court ruled in favor of Tower and against Ms. Smith in the amount of $4,779.19, plus interest from date of judicial demand at the rate of 29% until satisfied, attorney's fees of 25% of the principal and interest, and court costs ("Judgment").[7] The Judgment was revived on November 17, 2023.[8]

On September 17, 2024, Ms. Smith filed a chapter 7 bankruptcy case.[9] Tower filed Proof of Claim No. 1, asserting an unsecured claim for $23,905.04 based on the Judgment. At the initial meeting of creditors held on October 17, 2024, pursuant to 11 U.S.C. § 341, Tower's representative, Stephen Binning, questioned Ms. Smith, asking her if she was paying rent at the time (almost twelve years ago) and if so, how much. Ms. Smith responded that she believed it was $600 to $700 per month.

---

[3] Exhibit P-4.

[4] Exhibit P-4.

[5] Exhibit P-5.

[6] Case no. 13-07186, Baton Rouge City Court, Parish of East Baton Rouge.

[7] Exhibit P-6.

[8] Exhibit P-7.

[9] Case no. 24-10786, U.S. Bankruptcy Court, Middle District of Louisiana.

Tower filed this complaint objecting to the dischargeability of the debt owed it by Ms. Smith pursuant to 11 U.S.C. § 523(a)(2)(B),[10] contending that the Loan Application and the accompanying Budget were materially false statements in writing concerning her financial condition. In essence, as the Budget reflects, Ms. Smith would have only had sufficient cash flow to service Tower's loan if her rent obligation was $150 rather than $600-700 stated at the creditor's meeting. Based on that discrepancy, Tower alleges that it would not have made the loan with the higher rent obligation. Indeed, the Budget of monthly income and expenses would have been negative with a $600 rent obligation.

Ms. Smith filed an Answer, asserting several affirmative defenses and counterclaims.[11] Ms. Smith then filed a Motion to Dismiss,[12] which the court treated as a Motion for Summary Judgment due to the four affidavits attached as exhibits. Tower also sought partial summary judgment.[13] The court denied Ms. Smith's motion,[14] and it granted in part and denied in part Tower's Motion for Partial Summary Judgment, specifically (1) dismissing Ms. Smith's third, fourth, and fifth affirmative defenses to the extent that they sought to alter the Judgment, (2) dismissing Ms. Smith's first, second, and fourth counterclaims to the extent that sought to collect money damages from Tower or to alter the Judgment, (3) dismissing Ms. Smith's third counterclaim (emotional distress) for lack of jurisdiction over tort claims, (4) reserving Ms. Smith's claim that Tower had "unclean hands" with respect to its repossession of the Collateral

---

[10] P-1.

[11] P-5.

[12] P-21.

[13] P-27.

[14] P-44.

and application of any credit due Ms. Smith, and (5) granting Tower leave to amend its Complaint to provide details concerning the repossession or surrender of the Collateral.[15] Tower filed an Amended Complaint on June 10, 2025, contending that Ms. Smith voluntarily surrendered the Collateral prior to the state court Judgment and that in exchange, she agreed to receive a credit of $1,000 toward her indebtedness.

## II. Unclean Hands

At the outset, this lawsuit could have been rejected out of hand at the close of trial had Ms. Smith proven Tower had "unclean hands" in obtaining its Judgment or at any time prior to the filing of this bankruptcy. In *Precision Instrument Manufacturing. Co. v. Automotive Maintenance Machinery Co.*, the United States Supreme Court held that the "unclean hands" doctrine "closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant."[16] According to that doctrine, if Tower had "unclean hands" in its dealings with Ms. Smith related to the loan in question, it <u>could</u> be precluded from seeking a judgment of nondischargeability.[17]

Based on the Amended Complaint filed and the testimony at trial of Tower's representative, Stephen Binning, however, and that of Ms. Smith, which is corroborated by the exhibit admitted showing that Ms. Smith voluntarily surrendered the Collateral in exchange for a $1,000 credit, the court finds that Tower is not equitably precluded from seeking judgment based on its conduct prior to the bankruptcy.

---

[15] P-45.

[16] *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.,* 324 U.S. 806, 814, 65 S.Ct. 993, 997, 89 L.Ed. 1381 (1945).

[17] *See also Matter of Adair*, 137 F.4th 384 (5th Cir. 2025).

**III. Discthargeability**

Tower contends that the debt Ms. Smith owes it should be held nondischargeable pursuant to § 523(a)(2)(B). The U.S. Supreme Court found in *Bartenwerfer v. Buckley*:[18]

> Section 523(a)(2)(B) bars the discharge of debts arising from the "use of a statement in writing—(i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable ... reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive."[19]

In *Matter of Young*,[20] the Fifth Circuit held that "[t]he burden is on the creditor to prove, by a preponderance of the evidence, that the debt is nondischargeable."[21]

It is undisputed that the Loan Application and the Budget are statements regarding Ms. Smith's financial condition for purposes of § 523(a)(2)(B). The main issue in this case is whether Ms. Smith falsely stated what her rental obligation, or more specifically, what her payment was, on the Loan Application and Budget. Although neither Ms. Smith nor Mr. Binning could recall the particulars of how the Loan Application and Budget were filled out, the Loan Application itself undeniably reflects that she lived with her mother and her sister. Tower is stuck with that reality, along with the unrefuted testimony of two witnesses that confirm the living arrangement. The Loan Application, a standard document prepared by Tower, also provides a small box labeled "Payment" directly following a question concerning whether the prospective borrower rents or owns a home. The payment box was filled in as $150. And while the Loan Application and the Budget are not contracts themselves but rather precursors to the

---

[18] *Bartenwerfer v. Buckley*, 598 U.S. 69, 143 S. Ct. 665, 214 L. Ed. 2d 434 (2023).

[19] *Bartenwerfer,* 598 U.S. at 77.

[20] *Matter of Young*, 995 F.2d 547 (5th Cir. 1993).

[21] *Young*, 995 F.2d at 549 (citing *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

promissory note (clearly a Louisiana contract[22]) signed by Ms. Smith on the same day,[23] the *Keiland Constr., L.L.C. v. Weeks Marine, Inc.*,[24] case is instructive on interpretation of ambiguity:

In *Keiland,* the Fifth Circuit reasoned:

> Interpreting a contract under Louisiana law "is the determination of the common intent of the parties." La. Civ. Code Ann. art. 2045. … "[W]hen a contract is ambiguous, the trier of fact must resolve the factual issue of intent. ..." *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007). "A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, [and] the conduct of the parties before and after the formation of the contract ...." *Greenwood 950, L.L.C. v. Chesapeake La., L.P.*, 683 F.3d 666, 669 (5th Cir. 2012) (internal quotations omitted). "If the contract remains ambiguous, and if there are two or more reasonable interpretations, the contract is construed against its drafter." *Id.*

This court can easily make a plausible argument that a box in a standard form application asking a borrower to represent what the payment is could be interpreted to mean one of two things (1) total rent payment for the apartment, or (2) borrower's share of the rent payment. To the extent there is any ambiguity in the language of Tower's standard application forms, clearly a party with a significant bargaining position in relation to Ms. Smith and the drafter of the Loan Application and the Budget, this court must construe any ambiguity in favor of Ms. Smith.

At Ms. Smith's meeting of creditors on October 17, 2024, she testified under oath that she thought the rent was $600 to $700 per month. Ms. Smith contends that she was mistaken or confused at the meeting of creditors held twelve years after applying for the loan. The court's ruling rests largely on its assessment of the credibility of the testimony of Ms. Smith and her mother, Terri Eleby, at trial. Ms. Eleby, who was sequestered during her daughter's testimony, testified that Ms. Smith lived with her and other family members at the time the Loan

---

[22] The Promissory Note is replete with references to Louisiana law. Exhibit, P-4.

[23] Ex. P-4.

[24] *Keiland Constr., L.L.C. v. Weeks Marine, Inc.,* 109 F.4th 406, 415–16 (5th Cir. 2024).

Application and Budget were submitted. She testified consistently with Ms. Smith that the rent on the apartment, which was in her name, was $600 per month, but the obligation to pay that rent was shared amongst the family members. The court finds the testimony of both Ms. Smith and Ms. Eleby credible on this front. The court also finds credible Ms. Smith's testimony that twelve years later at the creditor's meeting, she had trouble remembering what the rent was, especially since she was moving quite a bit back then.[25] Perhaps more importantly now, Tower produced no evidence to the contrary, relying solely on Ms. Smith's testimony at the creditor's meeting. Therefore, Tower has not met its burden of proof to show that the Loan Application and Budget were materially false written statements concerning her financial condition.

At trial, Tower attempted to make much of the fact that Ms. Smith's address was listed incorrectly on the Loan Application. But she testified that the address on her Loan Application was consistent with the address on her drivers' license and that that address was another sister's residence where she received her mail. Ms. Smith explained that she put that address on her driver's license because she and her family were moving around a lot at that time and her sister living there was not. As the United States Supreme Court found in *Bartenwerfer*, a financial statement must be "materially false" to held nondischargeable. The court finds that the material issue here, and for the purposes of whether Tower would have made Ms. Smith the loan based on the Budget, is the *amount* of rent Ms. Smith paid. The court believes the testimony of both Ms. Smith and Ms. Eleby that Ms. Smith paid only $150 per month, representing her portion of the $600 rent in November 2012. It simply belies all logic to believe that a daughter with very

---

[25] At trial, Tower's counsel argued that it was telling that Ms. Smith did not mention that rent was shared in her Answer to the Complaint but waited until she filed her Motion to Dismiss after she had received the Loan Application in discovery. The court notes that at all times, including in Ms. Smith's Answer, Ms. Smith maintained that she "den[ied] that any statements made regarding rent in the credit application were false or material to [Tower's] decision to extend credit." P-5, p. 1.

modest income was paying the entire rent for the family living there. Tower's standard form application asked for the borrower's payment, without distinguishing between that obligation and the total rent for the apartment. This court believes the Loan Application and Budget were accurate and truthful.

The court finds that Tower has not met its burden of proving that Ms. Smith made a materially false financial statement. Because Tower has not met its burden of proving that most critical element of § 523(a)(2)(B), the court's inquiry ends here, and the court need not reach the remaining elements of § 523(a)(2)(B).

## IV.  Conclusion

The court finds in favor of Ms. Smith and against Tower. Ms. Smith's debt to Tower is a dischargeable debt in her bankruptcy case. The court will enter a judgment consistent with this Memorandum Opinion.

Baton Rouge, Louisiana, September 12, 2025.

<u>/s/ Michael A. Crawford</u>
MICHAEL A. CRAWFORD
UNITED STATES BANKRUPTCY JUDGE